UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LYNDSEY N., | |
| Plaintiff, | Case No. C22-1222-MLP |
| v. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## I.   INTRODUCTION

Plaintiff seeks review of the denial of her application for Supplemental Security Income. Plaintiff contends the administrative law judge ("ALJ") erred in excluding fibromyalgia and conversion disorder as severe impairments at step two, and in discounting her testimony about migraines, pain, and fatigue. (Dkt. # 10 at 1.) As discussed below, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## II.   BACKGROUND

Plaintiff was born in 2000, has an 8th-grade education and, at the time of the administrative hearing, was working toward a GED and had recently started her first job as a part-time restaurant hostess. AR at 36, 39-40, 45, 203-04. In June 2020, Plaintiff applied for

ORDER - 1

benefits, alleging disability as of July 1, 2019. *Id*. at 174-94. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing. *Id*. at 89-92, 99-106. After the ALJ conducted a hearing on August 2021 (*id*. at 32-54), the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 15-27.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 4.)

### III.   LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v.*

ORDER - 2

*Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

### IV.   DISCUSSION

**A.   The ALJ May Reconsider the Step-Two Findings on Remand**

At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. § 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.922(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting Social Security Ruling 85-28). An ALJ must first consider whether an impairment is medically determinable, and then assess whether it is severe. *See* 20 C.F.R § 416.921.

Plaintiff contends that the ALJ erred in excluding conversion disorder and fibromyalgia as severe impairments at step two, and the Court will consider each impairment in turn.

#### 1.   Conversion Disorder

The ALJ noted that Plaintiff had been diagnosed with several mental conditions, including conversion disorder, but found that because the record indicated that Plaintiff's conditions were effectively managed with medication during the adjudicated periods and Plaintiff's mental limitations were at most mild, these conditions were not severe.[1] AR at 20-22. The ALJ also acknowledged that in the years before the adjudicated period, Plaintiff's providers

---

[1] Plaintiff does not directly challenge the ALJ's findings that her mental limitations were at most mild, contending that the limitations caused by her conversion disorder were physical, rather than mental. (Dkt. # 15 at 3-4.)

ORDER - 3

suspected that her conversion disorder was the cause of her inability to use her left hand for lifting or grabbing, but the ALJ noted that the records dating to the adjudicated period do not reference "significant complaints" related to Plaintiff's left hand. *Id*. at 18. Accordingly, the ALJ found no severe medically determinable impairment related to Plaintiff's left hand. *Id*.

Plaintiff argues that the ALJ erred in looking to *physical* evidence related to her left-hand condition, when it seems that her left-hand deficits are the product of a conversion disorder, rather than a physical impairment. (Dkt. # 15 at 3-4.) This argument does not address the entirety of the ALJ's step-two findings, however, because it does not identify any error in the ALJ's finding that during the adjudicated period, Plaintiff's treatment notes do not document significant left-hand problems of any kind (whether mental or physical in origin). Plaintiff emphasizes that conversion disorder continued to be included in a list of her "active problems" (*id*. at 3 (citing AR at 305, 325, 335, 344, 417, 426)), but none of those treatment notes mentions any particular complaint of functional limitations related to either Plaintiff's left hand or conversion disorder. The mere inclusion of a diagnosis in a list does not answer whether a condition is severe as defined in the regulations. *See* 20 C.F.R. § 416.921 (indicating that a diagnosis alone is not sufficient to establish a severe impairment).

In records predating the adjudicated period, Plaintiff's providers treated and assessed Plaintiff's complaints of problems using her left hand and physicians observed fisting/posturing, suspecting that a conversion disorder was the cause of these physical problems. *See, e.g.*, AR at 458-59, 475-76, 490, 494-97, 499-500, 506-08, 513-16, 518. No such problems are documented in the records dating to the adjudicated period, however, and the ALJ thus properly found that

ORDER - 4

Plaintiff did not have a severe physical or mental impairment related to her left hand during the adjudicated period.[2]

### 2. *Fibromyalgia*

The ALJ acknowledged that some of Plaintiff's medical records mentioned a history of fibromyalgia, but the ALJ found that there was "little evidence in the file to corroborate [this] diagnos[is]." AR at 19. The ALJ went on to find that, "[n]onetheless," because the records do not document "any significant complaints, workup, or treatment relating to" fibromyalgia during the adjudicated period, the condition was not severe during the adjudicated period. *Id*. at 20.

According to Plaintiff, the ALJ erred in finding that her fibromyalgia was either not medically determinable or not severe. (Dkt. # 10 at 3.) The Commissioner defends the ALJ's finding that Plaintiff's fibromyalgia was not severe, emphasizing that the only references to fibromyalgia symptoms during the adjudicated period mention that Plaintiff's fibromyalgia pain had improved. (Dkt. # 14 at 4 (citing AR at 282, 371).) Thus, the Commissioner argues that because the record does not show that Plaintiff's fibromyalgia symptoms caused more than minimal workplace functional limitations, the ALJ did not err in finding fibromyalgia not severe. (*Id*.)

On reply, Plaintiff does not point to evidence linking significant workplace functional limitations to fibromyalgia in order to show that this condition was, in fact, severe, but argues instead that the ALJ erred in finding that her pain and fatigue were attributable to Ehlers-Danlos syndrome ("EDS") (*see* AR at 23), rather than attributable to *both* EDS and fibromyalgia. (Dkt. # 15 at 2.) This argument is insufficient to show that the ALJ should have found Plaintiff's

---

[2] The ALJ may reconsider this finding on remand if warranted by the updated record and additional testimony.

ORDER - 5

fibromyalgia to be severe because Plaintiff has not identified any evidence suggesting that her fibromyalgia caused significant workplace limitations during the adjudicated period.

Nonetheless, even if the ALJ properly found Plaintiff's fibromyalgia to be not severe, the ALJ was required to address any limitations caused by it when assessing Plaintiff's residual functional capacity ("RFC"). *See* 20 C.F.R. § 416.945(a)(2) (indicating that an RFC assessment must account for all limitations caused by a claimant's medically determinable impairments, even those that are not severe). Here, the ALJ did not mention fibromyalgia in his assessment of Plaintiff's RFC. *See* AR at 23-24. As further explained *infra*, Plaintiff will have an opportunity on remand to clarify her fibromyalgia allegations. At that point, the ALJ shall reconsider whether fibromyalgia is a medically determinable, severe impairment at step two, and if necessary, consider any fibromyalgia-related allegations when assessing Plaintiff's RFC.

**B.     The ALJ Erred in Assessing Plaintiff's Allegations**

Plaintiff contends that the ALJ failed to provide clear and convincing reasons, as required in the Ninth Circuit, to discount her allegations related to fibromyalgia and migraines. *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). The Court will address each of Plaintiff's arguments in turn.

1.     *EDS Hypermobility*

The ALJ summarized Plaintiff's allegations and explained that he discounted her allegations of disabling muscle/ligament problems because, although Plaintiff had been diagnosed with EDS when she was a teenager, the records dating to the adjudicated period indicate that this condition was "stable" and Plaintiff's treatment records fail to corroborate the existence of disabling physical limitations during the adjudicated period. AR at 23. The ALJ

ORDER - 6

emphasized that Plaintiff's physical examinations during the adjudicated period were unremarkable. *Id*.

Plaintiff argues that even if her EDS was "stable" during the adjudicated period, a description of a condition as "stable" does not necessarily imply that the condition causes no limitations. (Dkt. # 10 at 7.) Plaintiff emphasizes that her EDS was described as "stable" during an August 2019 appointment where Plaintiff requested a physical therapy referral, which suggests that she needed additional treatment. (*Id*. (citing AR at 292).) There is no evidence in the record that Plaintiff followed up on that referral to physical therapy, however. When that note is considered in the context of the entire record, which shows that during the adjudicated period Plaintiff did not raise significant EDS complaints to her providers and her physical examinations were normal, the ALJ did not err in finding that the record was not entirely consistent with Plaintiff's allegations of disabling limitations caused by EDS.

Plaintiff goes on to contend that the ALJ erred in focusing only on the limitations caused by EDS, but ignoring the pain and fatigue caused by her fibromyalgia, which would not be captured in the objective findings referenced by the ALJ. (Dkt. # 10 at 7-8.) As noted *supra*, the ALJ questioned the basis for the fibromyalgia diagnosis at step two (AR at 19), and to the extent that this was intended to constitute a finding that fibromyalgia was not medically determinable, it could explain why the ALJ did not explicitly mention fibromyalgia when assessing Plaintiff's RFC. *See* 20 C.F.R. § 416.945(a)(2) (indicating that an RFC assessment must account for all limitations caused by a claimant's *medically determinable* impairments, even those that are not severe).

But, as also noted *supra*, the ALJ's finding that fibromyalgia was not medically determinable was not explicitly defended by the Commissioner. The Commissioner instead

ORDER - 7

defended the ALJ's finding that the condition was not severe. (Dkt. # 14 at 4.) But even if the Commissioner is correct that the ALJ properly found fibromyalgia to be not severe, the ALJ was nonetheless required to assess the alleged limitations caused by that condition when crafting the RFC assessment. *See* 20 C.F.R. § 416.945(a)(2). On remand, Plaintiff will have the opportunity to clarify her allegations to delineate which symptoms or limitations are attributed to fibromyalgia, and if the ALJ finds fibromyalgia to be a medically determinable impairment at step two, the ALJ shall consider Plaintiff's fibromyalgia-related allegations when assessing her RFC.

### 2. Migraines

The ALJ cited evidence showing that Plaintiff reported an improvement in her migraines in August 2019, that she did not complain of or seek any migraine treatment in subsequent records, and that she denied any problems with headaches on four occasions in 2020 and 2021. AR at 24 (citing *id*. at 282). The ALJ went on to emphasize that Plaintiff had returned to finish up high school and was on track to graduate the following year. *Id*.

Plaintiff argues that the ALJ merely cited medical evidence, rather than explaining why that medical evidence contradicts her allegations, and thus failed to provide clear and convincing reasons to discount her testimony. The Court agrees. The ALJ's reference to Plaintiff's school activities is insufficiently explained to constitute a clear and convincing reason to discount her allegations. *See* AR at 24. It is not apparent from the ALJ's decision why the school activity is inconsistent with Plaintiff's alleged migraines, and the Court declines to flesh out the ALJ's reasoning in this regard.

The ALJ's findings as to the medical record likewise fail to explain why the cited records contradict Plaintiff's allegations. The ALJ simply summarized certain treatment notes, but failed

ORDER - 8

to provide any explicit analysis of that evidence to explain why that evidence led him to discount Plaintiff's allegations. A summary of medical evidence does not constitute a clear and convincing reason to discount a claimant's testimony. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 493-94 (9th Cir. 2015).

Because the ALJ failed to provide any legally sufficient reasons to discount Plaintiff's migraine allegations, this matter must be remanded to permit the ALJ to conduct the required analysis. Although Plaintiff requests in the alternative a remand for a finding of disability (dkt. # 10 at 11-12), the Court finds that Plaintiff's ability to start working for the first time toward the end of the adjudicated period, coupled with the lack of medical opinion evidence supporting a finding of disability, raises serious doubts as to whether she is disabled, and the Court therefore declines to find her eligible for benefits at this time. *See Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (explaining that courts retain discretion to remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act").

## V.   CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED**, and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ shall: (1) reconsider Plaintiff's migraine allegations; (2) reconsider whether fibromyalgia is a medically determinable, severe impairment at step two; and (3) reconsider any other parts of the decision as necessary in light of the updated record.

Dated this 22nd day of February, 2023.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 9